UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VISUAL SEMICONDUCTOR, INC., *et al.*,<br><br>    Appellants,<br>v.<br><br>STREAM TV NETWORKS, INC., *et al.*,<br><br>    Debtors-in-Posess.<br>and<br><br>WILLIAM HOMONY, *et al.*,<br><br>    Trustees. | Civil No. 2:25-cv-00751-JMG<br><br>Appeal Related to Case No. 23-10763-AMC in the United States Bankruptcy Court for the Eastern District of Pennsylvania |

### APPELLANTS' JOINT OPENING BRIEF ON APPEAL

R. Adam Swick (Admitted *Pro Hac Vice*)
AKERMAN LLP
500 West 5th Street, Suite 1210
Austin, TX  78701
Telephone: (737) 999-7103
Facsimile:  (512) 623-6701
Email: adam.swick@akerman.com

Donald N. David, SBN: 304846
Mark S. Lichtenstein (Admitted *Pro Hac Vice*)
AKERMAN LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email: donald.david@akerman.com
           mark.lichtenstein@akerman.com

John H. Thompson *(Admitted Pro Hac Vice)*
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile:  (202) 393-5959
Email: john.thompson@akerman.com

Leif M Clark (Admitted *Pro Hac Vice*)
Leif M Clark Consulting PLLC
1105 Bonner
Houston, TX 77007
Telephone: (210) 663-5183
Email: lmclark@leifmclark.com

*Attorneys for Appellant Visual Semiconductor, Inc.*

       -And-

- - 2 - -

| | |
|---|---|
| Andrew DeMarco SBN: 326294 | Christopher D. Michaels |
| DEVLIN LAW FIRM LLC | BROWN & MICHAELS PC |
| 156 Gilpin Avenue | 400 M & T Bank Building |
| Wilmington, DE 19806 | 118 North Tioga Street |
| Telephone:  (302) 449-9010 | Ithaca, NY 14850 |
| Facsimile:  (302) 353-4251 | Email: michaels@bpmlegal.com |
| Email: ademarco@devlinlawfirm.com | |

*Attorneys for Appellant Rembrandt 3D Holding Ltd*

## TABLE OF CONTENT

**Page**

STATEMENT OF JURISDICTION AND TIMELINESS OF APPEAL ................................... - 1 -

STATEMENT OF THE ISSUES ON APPEAL AND STANDARD OF REVIEW ................. - 1 -

STATEMENT OF ISSUES - STAY ORDER ........................................................................... - 1 -

STANDARD OF REVIEW .......................................................................................................... - 2 -

STATEMENT OF RELATED CASES ....................................................................................... - 3 -

STATEMENT OF THE CASE .................................................................................................... - 3 -

The Timing of the Sale Order and the Motion for Stay Pending Appeal ................................... - 4 -

History of Buyer's Possession of Property at Issue Prior to Sale ................................................ - 5 -

Equitable Mootness Is Not a Race ............................................................................................... - 7 -

CONCLUSION ............................................................................................................................. - 9 -

80808248;4

## TABLE OF AUTHORITIES

Page(s)

**Cases**

''*First Union Real Estate Equity and Mort. Invs. v. Club Assocs. (In re Club Assocs)*,
    956 F.2d 1065 (11th Cir. 1992) ...................................................................................7

*Continental Airlines,* 91 F.3d 553 (3d Cir. 1996) (en banc), *cert. denied sub. nom., Bank of New York v. Continental Airlines, Inc.*,
    519 U.S. 1156 (1997)...................................................................................................7

*Hilton v. Braunskill*,
    481 U.S. 770 (1987).....................................................................................................2

*In re One2One Comm'cns, LLC*,
    805 F.3d 428 (3d Cir. 2015).........................................................................................8

*In re: Rembrandt v. Stream TV Networks, Inc. and Technovative Media, Inc., et al.*,
    Civil Action No. 24-cv-02727 .....................................................................................3

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015).........................................................................................2

*In re Specialty Equip. Cos., Inc.*,
    3 F.3d 1043 (7th Cir. 1993) .........................................................................................7

*In re: Visual Semiconductor, Inc. v Stream TV Networks, Inc. et al., and William Homony, et al.*,
    Civil Action No. 2:24-cv-06397 ...............................................................................3, 7

*In re: Visual Semiconductor, Inc. v Stream TV Networks, Inc. et al, and William Homony, et al.*
    Civil Action No. 2:24-cv-06498 ...............................................................................3, 7

*Nken v. Holder*,
    556 U.S. 418 (2009).....................................................................................................2

**Statutes**

28 U.S.C. § 157(b)(2)(A).....................................................................................................1

28 U.S.C. § 158(a) ...............................................................................................................1

28 U.S.C. § 158(a)(1)...........................................................................................................1

28 U.S.C. §§ 158(a) and 1334.............................................................................................1

28 U.S.C. §§ 158(a) and (c)(2) ...........................................................................................1

28 U.S.C. §§ 1334(a) and 157(a) ..................................................................................................1

§ 363 of the Bankruptcy Code ......................................................................................................4

**Rules**

Fed. R. Bankr. P. 6004(h) ........................................................................................................5, 9

Fed. R. Bankr. P. 8002 ..................................................................................................................1

Fed. R. Bankr. P. 8007 ..........................................................................................................2, 3, 9

Fed. R. Bankr. P. 8007(a)(2) .........................................................................................................2

Fed. R. Bankr. P. 8018 ..................................................................................................................1

80808248;4

## STATEMENT OF JURISDICTION AND TIMELINESS OF APPEAL

The Bankruptcy Court had subject-matter jurisdiction over this case under 28 U.S.C. §§ 158(a) and 1334 and the *Standing Orders of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**"), dated July 25, 1984 and November 8, 1990.

This Court has appellate jurisdiction over the Order under 28 U.S.C. § 158(a), which states in relevant part that district courts "shall have jurisdiction to hear appeals . . . (1) from final judgments, orders, and decrees" of a bankruptcy court.

This appeal is timely because the Order appealed from were entered is follows:

i. *Order* denying Stay Motion (the "**Stay Order**") (Transmission of Record at 145-148; Bankr. Doc 938)[1] entered on January 29, 2025. On February 11, 2025, Appellants timely filed their joint notice of appeal of the Stay Order under 28 U.S.C. §§ 158(a) and (c)(2) and Rule 8002, of the Federal Rules of Bankruptcy Procedure ("**Fed. R. Bankr. P.**"). This Court has appellate jurisdiction under 28 U.S.C. § 158(a)(1).

Jurisdiction initially vested in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF THE ISSUES ON APPEAL AND STANDARD OF REVIEW

*Statement of Issues - Stay Order*

- Whether the Bankruptcy Court erred in (i) in denying the Stay Motion and rendering the Stay Motion as Moot; (ii) in finding that VSI delayed in filing the Stay Motion and set the Stay Motion for hearing more than a month and a half after the Sale Order becoming effective; and (iii) in finding that VSI waived its right to seek a stay pending resolution of the Appeal before the Closing could occur.

---

[1] Record references are as follows: "A-___" refers to pages in the Appendix to Appellant's Opening Brief filed in the Related Case, 9019 Order Appeal, Civil Action No. 2:24-cv-06397; "Bankr. Doc. ____" refers to a document in the Bankruptcy Court's docket in Case No. 23-10763 (JMG). "Doc. ____" refers to a document in this Court's docket for this case. Unless otherwise stated, references to citations are to the relevant entries in the bankruptcy docket. *See* Fed. R. Bankr. P. 8018.

## STANDARD OF REVIEW

Under Federal Rule of Bankruptcy Procedure 8007, a party can move to stay the effect of a bankruptcy court order pending a resolution on appeal. *See* Fed. R. Bankr.P. 8007. The factors considered for a stay pending appeal "overlap" the familiar ones courts look to in ruling on applications for preliminary injunctions. *See Nken v. Holder*, 556 U.S. 418, 434, (2009) (observing that "similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined"). The following factors come into play:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, (1987). In order not to ignore the many gray shadings stay requests present, courts "balance[e] them all" and "consider the relative strength of the four factors." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

"[T]he most critical" factors, according to the Supreme Court are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm--the latter referring to "harm that cannot be prevented or fully rectified" by a successful appeal. *Nken*, 556 U.S. at 434. Though both are necessary, the former is arguably the more important piece of the stay analysis, in light of the equity jurisprudence purpose to remedy a legal wrong. *Revel*, 802 F.3d at 568.

Rule 8007(a)(2) has no time deadline for a motion to stay the effect of the order pending appeal.

## STATEMENT OF RELATED CASES

Currently pending before this Honorable Court are Rembrandt 3D Holding Ltd.'s appeal relating to the Bankruptcy Order granting motion to approve compromise under 9019. *In re: Rembrandt v. Stream TV Networks, Inc. and Technovative Media, Inc., et al.*, Civil Action No. 24-cv-02727 (the "Rembrandt Appeal"); and Visual Semiconductor, Inc's appeals relating to the 9019 Order, *in re: Visual Semiconductor, Inc. v Stream TV Networks, Inc. and William Homony, et al.,* Civil Action No. 2:24-cv-06397 ("9019 Order Appeal"); the Bid Procedures Order, *in re: Visual Semiconductor, Inc. v Stream TV Networks, Inc. and William Homony, et al.* Civil Action No. 2:24-cv-06498 (the "Bid Procedures Order Appeal"), and the Sale Order, *in re: Visual Semiconductor, Inc. v Stream TV Networks, Inc. and William Homony, et al;* Civil Action No. 2:24-cv-06617 (the "Sale Order Appeal") (collectively, the "Related Cases").

The Related Cases deal with the Trustee's attempts to sell non-debtor assets to the Hawk Parties (as defined in the Related Cases) and related systemic denials of due process to the Appellants and the owners of the non-debtor property whose unauthorized sale by the Trustee was approved by the Bankruptcy Court. In the interests of economy, Appellants incorporate by reference the Appellants' briefs filed in the Related Cases for a more detailed narrative of the history of the bankruptcy cases.[2]

## STATEMENT OF THE CASE

This specific appeal deals with the Court's incorrect denial of Appellants' Motion to Stay the Sale Order (Bankr. Doc. 898) pending its appeal as moot, without engaging in the analysis required by Rule 8007 as to the propriety of a stay pending appeal, which when considered with the appellate issues in the Related Cases, present a pattern of the Bankruptcy Court's bias against

---

[2] Capitalized terms not defined herein shall have the meaning set forth in Appellants' briefs filed in the Related Cases.

- 3 -

the Appellants and in favor of the Trustee, regardless of the Trustee's ultra vires actions in the underlying bankruptcy case and systematic avoidance of discovery regarding, among other things, his brazen marketing and sale of non-debtor property pursuant to section 363 of the Bankruptcy Code.

*The Timing of the Sale Order and the Motion for Stay Pending Appeal*

The Court entered the Sale Order on December 9, 2024. Fourteen (14) days later, on December 23, 2024, before the Trustee closed on the sale approved by the Sale Order. Appellants filed their joint Stay Motion, seeking to stay the Sale Order pending resolution of numerous appeals by the Appellants as to the Bankruptcy Court's and Trustee's ability to sell non-Debtor property pursuant to section 363 of the Bankruptcy Code and other due process violations which took place in order for the Court to rubber stamp the Trustee's *ultra vires* sale of Rembrandt's property[3].

Because there was no emergency, Appellants then scheduled a hearing, on the Court's next available hearing calendar on January 29, 2025. The Trustee's sale pursuant to the Sale Order ultimately closed on January 6, 2025, which was notably <u>nearly a month AFTER the Trustee told the Bankruptcy Court the parties "needed to close" to meet their obligations under the 9019 Settlement Agreement</u>. *See* December 4, 2024 Hearing Transcript at 77:3-7 [Bankr. Doc. 959]. Indeed, contrary to the representations of both Trustee's counsel and SeeCubic's counsel at a December 18, 2024 hearing regarding Trustee's motion to extend time, the outstanding wire from the buyer (SeeCubic) was not imminent, or "hitting any minute now," or expected "to post in the coming days." *See* December 18, 2024 Hearing Transcript at 5:23-6:22 [Bankr. Doc. 959]. The Trustee then filed a response to the Stay Motion on January 22, 2025, arguing equitable mootness because the sale had closed.

---

[3] Notably, this same 363 sale also implicates the intellectual property rights of other parties, including Philips and Leia, which neither the Trustee nor the Bankruptcy Court's Sale Order acknowledges.

- 4 -

80808248;4

The Trustee's arguments of delay on Appellants' part in his Response, which the Court adopted, are baseless, as is evident from the Court's own reasoning in the Stay Order. The Court states in the Stay Order that the Sale Order was immediately effective, authorizing a closing as soon as it was entered. Although the Trustee was unable to close as originally expected on December 10, 2024 (one day after the Sale Order was entered and a date the Trustee and SeeCubic insisted was sacrosanct), that does not change the fact that the Court's equitable mootness holding (conferring "immediate effectiveness" upon the Sale Order) any request for a stay pending appeal would be rendered immediately moot even if the Appellants had filed a motion to stay rending appeal on December 9, 2024. In in simple parlance, the Trustee's argument can be reduced to "heads I win, tails you lose."

The mootness/timing arguments raised by the Trustee and adopted by the Court also ignore the history of this case and the fact that the Buyers at all times exercised unauthorized possession of and control over the property the Trustee was purportedly "selling", including non-debtor property, which fact the sale's closing did not change. Based on the record required to obtain a stay pending appeal, Appellants moved as quickly as could be reasonably expected to file the Stay Motion and set it for hearing. Normally, 363 sale orders do not become final until fourteen days after they are entered pursuant to Bankruptcy Rule 6004(h). But here, those requirements were waived for no apparent reason in this case other than to set up an equitable mootness argument *ab initio*.

### History of Buyer's Possession of Property at Issue Prior to Sale

It is clear that the Buyer – directly or through its Chairman and CEO, Shadron L. Stastney, as an individual – has at all relevant times maintained wrongful possession and exercised inappropriate control over the Debtors' assets (and apparently the property of Rembrandt, Leia, and Philips) for more than 4 years. SeeCubic (a) seized those assets pursuant to a settlement

- 5 -

agreement (See A-1062,1064, 1090-1091, 1093-1094, 11/22/24 Robertson Declaration at ¶¶ 12, 15-16, 18, 105-106, 111-114, and 117 in Sale Order Appeal) that was found to be void *ab initio* by the Delaware Supreme Court (A-1065, *Id* at ¶ 21); (b) retained all significant assets on remand to the Delaware Chancery Court, despite multiple court orders (A-1066, 1067-1069, *Id* at ¶¶ 24-25 and 28-30) arguing that it should not have to return them because the assets had been improved while in SeeCubic's wrongful possession (A-1067-1068, *Id* at ¶ 28); (c) retained computer servers in Silicon Valley that stored not only Stream's valuable source code, but the intellectual property of Philips and Rembrandt as well (A-1067, 1088-1090, *Id* at ¶¶ 27 and 96-102) (d) controlled all aspects of the Debtors' technology in the Netherlands by installing SeeCubic CEO Stastney as director of the Debtors' three Dutch subsidiaries (A-1073-1076, 1090, *Id* at ¶¶ 45, 47-52, 54, and 103); and (e) executed an improper return of Stream's most valuable tangible asset, the optical bonding equipment, by transferring possession to a non-debtor subsidiary which – under the control of SeeCubic CEO Stastney – refused to surrender the property to Stream during the pendency of these Bankruptcy Cases. A-1073-1074, 1077-1078, 1085-1086, *Id* at ¶¶ 45, 47-¶¶ 59 and 86-87.

Despite a Bankruptcy TRO in effect since January 4, 2024 and extended on multiple occasions – most recently until January 13, 2025 (A-1662-1663, Adversary Case 23-00057-amc, ECF 157) – SeeCubic continuously and publicly maintained six public websites stating that SeeCubic is the owner of the Debtors' technology. *See* A-1091, 11/22/24 Robertson Declaration at ¶ 107. Therefore, the closing of the sale pursuant to the Sale Order did not change anything or render anything moot, it was simply the last step pursuant through which, the Hawk Parties, with the support of the Trustee in exchange for payment of his administrative expenses, sought Court

approval to "transfer title" and place the Bankruptcy Court's imprimatur on the Hawk Parties' misappropriation 4 years ago and misconduct since.

*Equitable Mootness Is Not a Race*

The Trustee rushing the Court to rubber stamp the 9019 Order, the Bid Procedures Order, and the Sale Order when the Appellants were systematically denied due process and denied the ability to conduct discovery or put on evidence before the Court, cannot be sanitized by the Court's entry of the Sale Order or the sale's closing.

The balancing inherent in an equitable mootness analysis is not a relative weighting of the factors, but the balancing of the dismissal of an appeal on mootness grounds against a party's traditional right to appellate review. As stated by one court, equitable mootness analysis must "strik[e]" the proper balance between the equitable considerations of finality and good faith reliance on a judgment *and* the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him. *First Union Real Estate Equity and Mort. Invs. v. Club Assocs. (In re Club Assocs),* 956 F.2d 1065, 1069 (11th Cir. 1992) (emphasis added);Manges *v. Seattle-First Nat'l Bank (In re Manges),* 29 F.3d 1034, 1039 (5th Cir. 1994), cert. *denied,* 513 U.S. 1152 (1995) (same) *(citing In re Club Assocs.); see also, In re Specialty Equip. Cos., Inc.,* 3 F.3d 1043, 1048 (7th Cir. 1993) ("'reviewing court to strike an appropriate balance between the equitable notions of finality and good faith reliance on a judgment, and the competing interests that underlie the right of a party to seek review of an adverse ruling by a bankruptcy court''); In *re Continental Airlines,* 91 F.3d 553, 566 (3d Cir. 1996) (en banc), *cert. denied sub. nom., Bank of New York v. Continental Airlines, Inc.,* 519 U.S. 1156 (1997) (after analyzing the equitable mootness factors, the court stated "[t]he [appellant has] not presented us with any arguments which would weigh against *all* of the prudential considerations that dictate that this consummated reorganization must be left in place.") (emphasis added).

The Trustee, when first presented with the risk that he was attempting to sell non-debtor property to the Buyer on June 14, 2023,[4] should have first filed an adversary proceeding to determine what is and is not property of the estate prior to the sale. Rushing through a sale process devoid of any guardrails and without the Appellants being afforded an opportunity to meaningfully participate, cannot ever be the basis for the Trustee's or Buyer's good faith reliance on the finality of the Bankruptcy Court's orders, especially given the Buyer's checkered history in this case. The Hawk Parties are not third-party purchasers that just participated in the sale process for the first time; they are active litigants in a dispute that had been pending for more than 5 years. The Buyer's payment of the Trustee to rush through a sale process does not entitle it to victory on December 9, 2024, when the Sale Order was entered, simply because the Trustee was able to convince the Bankruptcy Court that a closing was "imminent" as per the agreement between the Trustee (a fiduciary clearly beholden to the Buyer and not acting in the best interests of the Debtors) and the Buyer (a party that was in possession of property in violation of both the automatic stay and a Bankruptcy Court issued TRO and whose designation as a good faith purchaser is sham).

As stated by the Third Circuit observed in reflecting on the judge-made doctrine of equitable mootness in *In re One2One Comm'cns, LLC*, 805 F.3d 428, 446–47 (3d Cir. 2015) (Krause, J., concurring in reversal of district court's equitable mootness dismissal and remand for consideration of bankruptcy appeal on the merits):

> The doctrine was intended to promote finality, but it has proven far more likely to promote uncertainty and delay. Ironically ... a motion to dismiss an appeal as equitably moot has become "part of the Plan." Proponents of reorganization plans now rush to implement them so they may avail themselves of an equitable mootness defense, much like Appellees did here. Rather than litigate the merits of an appeal, parties then litigate equitable mootness. And even if an appeal is dismissed as

---

[4] S*ee* Bankr. Doc 797, 797-3. This date ignores the Court's TRO protecting Rembrandt's intellectual property, which pre-existed the Trustee's entrance into this case, and also ignores a January 30, 2024 meeting with Rembrandt's counsel.

equitably moot by a district court, that dismissal is appealed to our Court, often resulting, in turn, in a remand and further proceedings.

This is precisely the sort of situation that Appellants now find themselves, except theirs is in the context of a sub-rosa plan contained within a 363 sale that was rushed precisely so the Trustee could avail himself to an equitable mootness defense, rather than actually litigating the merits of the pending appeals. Once again, we observe the Trustee's mantra: "heads I win; tails you lose."

The Stay Order only rules on equitable mootness and fails to analyze any of the actual requirements pursuant to Rule 8007, which Appellants carefully laid out in their Motion to Stay in arguing for a stay pending appeal. Other than finding equitable mootness, the Court does not address any other deficiency on the Appellants' part in seeking a stay pending appeal of the Sale Order. The denial of the Stay Motion, including the legal basis, is further evidence of the Bankruptcy Court's bias in favor of the Trustee, whom the Court appointed in the first place, and whose mismanagement of this case, compounded with its collusion with the Buyers, have created the legal mess for which the Trustee now seeks to blame the Appellants. The Appellants timely filed a motion for stay pending appeal and were entitled, at the very least, to the Court's ruling on the merits, as opposed to an equitable mootness ruling that was purposefully baked into the Sale Order by the elimination of the requirements of Rule 6004(h). For purposes of the other pending Related Cases on appeal, the Bankruptcy Court's denial of the Stay Motion is further evidence of the Court's pattern of rulings which have systematically denied the due process rights of the Appellants in these cases.

## CONCLUSION

For the foregoing reasons, the Appellants respectfully request that the Court vacate or reverse the Stay Order.

Dated: April 4, 2025           **AKERMAN LLP**

By:    */s/ R. Adam Swick*
      R. Adam Swick
      500 West 5th Street, Suite 1210
      Austin, TX 78701
      Telephone: (737) 999-7103
      Facsimile: (512) 623-6701
      Email: adam.swick@akerman.com

      Donald N. David, SBN: 304846
      Mark S. Lichtenstein
      AKERMAN LLLP
      1251 Avenue of the Americas
      37th Floor
      New York, NY 10020
      Telephone: (212) 880-3800
      Facsimile: (212) 880-8965
      Email: donald.david@akerman.com
             mark.lichtenstein@akerman.com

      John H. Thompson
      AKERMAN LLP
      750 Ninth Street, N.W. 750
      Washington, D.C. 20001
      Telephone: (202) 824-1760
      Facsimile: (202) 393-5959
      Email: john.thompson@akerman.com

      *Attorneys for Appellant Visual Semiconductor, Inc.*

      -and-

By:   */s/Andrew DeMarco*
      Andrew DeMarco SBN: 326294
      DEVLIN LAW FIRM LLC
      156 Gilpin Avenue
      Wilmington, DE 19806
      Telephone:   (302) 449-9010
      Facsimile:   (302) 353-4251
      Email: ademarco@devlinlawfirm.com

-and-

Christopher D. Michaels
BROWN & MICHAELS PC
400 M & T Bank Building
118 North Tioga Street
Ithaca, NY 14850
Telephone:
Facsimile:
Email: michaels@bpmlegal.com

*Attorneys for Appellant Rembrandt 3D Holding Ltd*

- 11 -

- 12 -

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies the following:

1. The foregoing *Opening Brief of Appellant* (the "**Brief**") complies with: (i) the page limit provided in the *Scheduling Order* of March 6, 2025, at Docket No. 2, because, excluding the parts of the document exempted by the *Policies and Procedures* of Judge John M. Gallagher, it contains 15 pages; and (ii) the typeface and type-style requirements provided in the *Policies and Procedures*, Section B.2, because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman with 12 point font.

2. On April 4, 2025, I electronically filed the Brief with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the appellate CM/ECF system. The text of the electronic version of the Brief is identical to the text of the hard copies that will be provided.

Dated: April 4, 2025

/s/ Adam Swick<br>
R. Adam Swick

80808248;4