Case No.:   2:25-cv-00751-JMG

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF: STREAM TV NETWORKS, INC., et al.

APPEALS OF REMBRANDT 3D HOLDING LTD.
AND VISUAL SEMICONDUCTOR, INC. FROM DENIAL OF STAY
PENDING APPEAL IN BANKR. E.D. Pa. No. 23-10763-DJB

## APPELLEE'S ANSWERING BRIEF

| | |
|---|---|
| Steven M. Coren, Esquire | Michael D. Vagnoni, Esquire |
| **COREN & RESS, P.C.** | Edmond M. George, Esquire |
| Two Commerce Square, Suite 3900 | **OBERMAYER REBMANN MAXWELL & HIPPEL LLP** |
| 2001 Market Street | Centre Square West |
| Philadelphia, PA 19103 | 1500 Market Street, Suite 3400 |
| Telephone: (215) 735-8700 | Philadelphia, PA 19102 |
| | Telephone: (215) 665-3066 |

*Counsel to Appellee William A. Homony, Chapter 11 Trustee*

**APPELLEE'S CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Bankruptcy Procedure 8014(b), 8014(a)(1), and 8012, Appellee states as follows: 1) Debtor Stream TV Networks, Inc. has no parent corporation and no publicly held corporation owns 10% or more of its stock. According to the records of Stream TV Networks, Inc., Hawk Investment Holdings Limited is a privately held entity that holds more than 10% of the stock of Stream TV Networks, Inc.; 2) Debtor Stream TV Networks, Inc. is the parent corporation of Debtor Technovative Media, Inc.

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

COUNTERSTATEMENT OF ISSUES ON APPEAL ........................................................... 1

STANDARD OF APPELLATE REVIEW ............................................................................. 1

STATEMENT OF THE CASE ............................................................................................... 2

    A.  The Sale Order Was Effective Immediately ............................................................. 3

    B.  Appellants Drag Their Feet In Seeking A Stay ......................................................... 4

    C.  The Bankruptcy Court Properly Denies Appellants' Belated Stay Motion ............... 5

SUMMARY OF THE ARGUMENT ...................................................................................... 6

ARGUMENT ........................................................................................................................... 7

    A.  Appellants Fail To Make Any Cogent Argument Establishing That The Bankruptcy Court Abused Its Discretion In Denying A Stay ........................................................ 7

    B.  As the Sale Has Closed The Instant Appeal Is Actually and Statutorily Moot ........ 7

        1.  The Appeal Is Actually Moot ............................................................................. 7

        2.  The Appeal Is Statutorily Moot ......................................................................... 9

    C.  Even Had the Sale Not Closed, Appellants Failed to Demonstrate That They Are Entitled to a Stay Pending Appeal, And The Bankruptcy Court Did Not Deny Its Discretion In Denying One .................................................................................................................. 9

        1.  Appellants Failed to Establish Irreparable Harm ............................................. 12

        2.  Appellants Will Not Succeed on the Merits .................................................... 13

        3.  A Stay Would Harm the Public Interest .......................................................... 13

        4.  A Stay Would Cause Harm to Other Parties ................................................... 14

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Boyke v. Mobility Distrib. Inc.*, 2015 WL 1225038 (M.D. Pa. Mar. 17, 2015) .............................. 8

*Brown v. Phila. Mun. Court*, 47 F. App'x 129 (3d Cir. 2002) .......................................................... 8

*Cipla Ltd. v. Amgen Inc.*, Case 2019 WL 2053055 (D. Del. May 9, 2019) .................................... 13

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) ............................................................................. 8

*Dehainaut v. Cal. Univ. of Pa.*, 2011 WL 3810132 (W.D. Pa. Aug. 29, 2011) ............................ 13

*Donovan v. Punxsutawney Area School Bd.*, 226 F.3d 211 (3d Cir. 2003) .................................... 8

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ................................................................................... 13

*In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794 (E.D. Pa. 2000) ..................... 1

*In re General Motors Corp.*, 409 B.R. 24 (Bankr. S.D.N.Y. 2009) ............................................. 10

*In re Hagood Reserve, LLC*, 2010 WL 5067444 (Bankr. W.D.N.C. 2010) ............................... 5, 7

*In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004) ............................................ 1

*In re Najieb*, 80 Fed. App'x 734 (3d Cir. 2003) ............................................................................ 8

*In re Prosser*, 2021 WL 864949 (D.V.I. Mar. 8, 2021) ............................................................. 8, 9

*In re Prosser*, 469 B.R. 228 (D.V.I. 2012) ................................................................................... 12

*In re Pursuit Cap. Mgmt., LLC*, 874 F.3d 124 (3d Cir. 2017) ................................................. 9, 14

*In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015) .................................................................. 1, 10

*In re: Richards*, 2013 WL 84850 (D.V.I. Jan. 8, 2013) ................................................................. 9

*In re Savage & Assocs, P.C.*, No. 05 Civ. 2072, 2005 U.S. Dist. LEXIS 3161,
   2005 WL 488643,  (S.D.N.Y. Feb. 28, 2005) ........................................................................... 13

*In re Thorpe*, 540 B.R. 552 (E.D. Pa. 2015) .................................................................................. 1

*Jones v. U.S. Bank*, N.A., 2019 WL 5109746 (M.D. Pa. Oct. 11, 2019) ..................................... 10

*Matter of Highland Cap. Mgmt., L.P.,*  74 F.4th 361 (5th Cir. 2023) .......................................... 12

*Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996) ....................................................... 13

*Newspaper, Newsprint, Magazine and Film Delivery Drivers, Helpers, and Handlers,
   Int'l Brotherhood of Teamsters, Local Union No. 211 v. PG Publ'g Co., Inc.*, 2019 WL
   9101872,  (W.D. Pa. Dec. 27, 2019) ........................................................................................ 12

*Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645 (3d Cir. 1997) ............................ 5, 9

*S.S. Body Armon I, Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763 (3d Cir. 2019) .......... 10

**Statutes and Rules**

11 U.S.C. § 363 ...................................................................................................................... *passim*

Bankruptcy Rule 6004 ................................................................................................................. 5, 7

## COUNTERSTATEMENT OF ISSUES ON APPEAL

1. Whether the Bankruptcy Court's order denying a stay should be affirmed due to Appellants' brief arguing only that the Bankruptcy Court erred in applying the equitable mootness doctrine, when the Bankruptcy Court's denial of a stay was not based on the equitable mootness doctrine?

SUGGESTED ANSWER: Yes.

2. Whether the Bankruptcy Court's order denying a stay should be affirmed when the sale as to which a stay is sought has been consummated, rendering this appeal actually and statutorily moot?

SUGGESTED ANSWER: Yes.

3. Whether the Bankruptcy Court's order denying a stay should be affirmed due to Appellants' failure to establish any of the four elements required for entry of a stay pending appeal?

SUGGESTED ANSWER: Yes.

## STANDARD OF APPELLATE REVIEW

In reviewing the denial of a stay pending appeal, the Court applies an abuse of discretion standard. *See In re Revel AC, Inc.*, 802 F.3d 558, 567 (3d Cir. 2015). An abuse of discretion exists when a judicial action "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004); *see also In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 797 (E.D. Pa. 2000) ("Discretion will be found to have been abused only when the judicial action is arbitrary, fanciful or unreasonable") (internal quotation marks omitted). Findings of fact are reviewed for clear error and legal determinations are reviewed *de novo*. *See Revel*, 802 F.3d at 567; *In re Thorpe*, 540 B.R. 552, 560 (E.D. Pa. 2015).

## STATEMENT OF THE CASE

On December 9, 2024, after notice to all potentially interested parties and several hearings, the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") entered an order (the "Sale Order," RA25-RA107[1]) approving the sale (the "Sale") of substantially all assets (the "Assets") of Debtors Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative," and together with Stream, the "Debtors") to SeeCubic, Inc. ("SeeCubic"). The Sale Order authorized the Sale as contemplated by a prior Bankruptcy Court order (the "Settlement Order," RA7-RA9) approving a settlement between the Trustee and Hawk Investment Holdings, Ltd. ("Hawk") as collateral agent for the secured noteholders of SeeCubic (the "Settlement").

Appellants' appeals of the Bankruptcy Court's Settlement Order, order approving bidding procedures, and the Sale Order are currently pending before this Court, with briefing concluded on March 4, 2025. *See* E.D. Pa. Case. Nos. 2:24-cv-02727; 2:24-cv-06397; 2:24-cv-06498; 2:24-cv-06617 (collectively referred to herein as the "Sale Appeal"). Even though the Sale closed nearly four months ago—rendering the Sale Appeal statutorily moot and this appeal functionally moot—Appellants erroneously seek vacatur or reversal of the Bankruptcy Court's denial of VSI's belatedly-filed motion for a stay of the Sale pending appeal.[2]

---

[1] References herein to: 1) "RA__" refer to the Appendix filed by Rembrandt in the related pending appeals (E.D. Pa. 24-cv-2727, D.I. 18 through 18-2); 2) "VSIA__" refer to the Appendix filed by VSI in the related pending appeals (E.D. Pa. 24-cv-6397, D.I. 16-1 through 16-6); and "TA__" refer to the Appendix filed by the Trustee in the related pending appeals (E.D. Pa. No. 24-cv-06397, D.I. 17-1 and 17-2).

[2] The Trustee's Answering Brief in the Sale Appeal (the "Sale Appeal Brief," E.D. Pa. No. 24-cv-06397, D.I. 17) provides a more fulsome discussion of the factual background underlying the Sale and related proceedings in the Bankruptcy Court, which the Trustee incorporates by reference here. In the instant brief, the Trustee sets forth only those facts which relate to Appellants' failure to obtain a stay of the Sale pending appeal.

### A. The Sale Order Was Effective Immediately

The Bankruptcy Court approved the Sale following numerous hearings and voluminous written submissions concerning Appellants' objections to the Sale, as well as to the Settlement. The hearing at which the Trustee sought final approval of the Sale was held on December 4, 2024 (the "Sale Hearing"). *See* RA311-RA388 (Transcript). VSI and Rembrandt were both aware, having been active participants in the Sale Hearing, that the Trustee and SeeCubic intended to close promptly once the Sale was approved. *See, e.g.*, RA387 (counsel for SeeCubic advises the Bankruptcy Court that "the APA contemplates an . . . outside date for closing of December 10th," and the Bankruptcy Court responds "I'm going to enter an order prior to the 10th").

The Bankruptcy Court entered the Sale Order on December 9, 2024. *See* RA25-RA107 (Sale Order). The Sale Order was effective immediately and authorized the immediate closing of the Sale. *See* RA56, *id.* at ¶ 37 ("[T]he terms and conditions of this Sale Order shall be effective immediately upon entry and the Trustee and the Buyer are authorized to close the Sale immediately upon entry of this Sale Order.").

The same day, VSI and Rembrandt filed a joint notice of appeal of the Bankruptcy Court's approval of the Sale. *See* RA19-24 (Joint Notice of Appeal). Indeed, VSI and Rembrandt filed their joint notice of appeal *before* the Bankruptcy Court had even entered the Sale Order, and then filed an amended notice of appeal following entry of the Sale Order. *See* Bankr. D.I. 877 (Amended Joint Notice of Appeal, filed December 10, 2024). On January 8, 2025, the Bankruptcy Court issued its Opinion in support of the Sale Order, pursuant to Local Bankruptcy Rule 8003-1. *See* RA1851-1871 (the "Sale Opinion"). As aptly summarized in the Sale Opinion, both the Sale and the Settlement were extensively litigated, leading the Bankruptcy Court to hold, *inter alia*, that: 1) "the Trustee satisfied his fiduciary duties in reaching the Settlement, marketing the Assets

3

for sale, and declaring the . . . winning bid . . . . The Trustee has sound business justification for the Sale, and he is faced with non-operational Debtors, enormous liabilities, and little funding"; and 2) "SeeCubic is entitled to a finding that it acted in good faith in connection with the Sale." RA1854, RA1869-70, Sale Opinion at pp. 4, 19-20.

On January 6, 2025, the Trustee filed a notice with the Bankruptcy Court (the "Notice of Closing") confirming that "Debtors closed on the Sale of substantially all of their Assets to SeeCubic, Inc. . . . on January 3, 2025 and . . . the Trustee has received as of the date of the Closing a total of Seven Million Five Hundred Thousand Dollars ($7,500,000.00) . . . ." TA674-75 (Bankr. D.I. 915).

### B. Appellants Drag Their Feet In Seeking A Stay

On December 9, 2024, instead of timely seeking a stay pending appeal with the Bankruptcy Court, Appellants filed an Emergency Joint Petition for (I) of Mandamus; (II) Writ of Prohibition; (III) Motion for Stay Pending Appeal; and (IV) In the Alternative, Motion for Withdrawal of Reference of Bankruptcy Court (the "Mandamus Petition") with this Court, which was assigned E.D. Pa. No. 24-cv-6548. *See* TA711-787. On December 12, 2024, after consideration of the Trustee's opposition (TA788-829), this Court summarily denied the Mandamus Petition due to, *inter alia*, Appellants' failure to first apply to the Bankruptcy Court for a stay pending appeal as required by Bankruptcy Rule 8007. *See* TA830-831.

On December 23, 2024—two weeks after Appellants filed their notice of appeal of the Sale Order and eleven days after this Court denied the Mandamus Petition—VSI filed a motion in the Bankruptcy Court to stay the Sale Order pending appeal (the "Stay Motion"). *See* TA436-465 (Bankr. D.I. 898). VSI noticed the Stay Motion in the ordinary course for hearing on January 29, 2025, and did not seek emergency or expedited consideration. *See* TA669-73 (Bankr. D.I. 906).

The day before the hearing, Rembrandt filed a joinder to VSI's Stay Motion. *See* Bankr. D.I. 936. The Sale closed more than three weeks before the January 29, 2025 motion hearing date. *See* TA674-75 (Bankr. D.I. 915).

### C. The Bankruptcy Court Properly Denies Appellants' Belated Stay Motion

On January 29, 2025, after holding a hearing, the Bankruptcy Court issued an order denying the stay pending appeal (the "Stay Denial Order") and holding as follows:

> VSI was . . . on notice as of the Sale Hearing that the Trustee and SeeCubic intended to close on the Sale soon after an order approving it was entered. . . . The Stay Motion offers no explanation as to VSI's reasoning in not filing the Stay Motion promptly after the Sale Order was entered and seeking expedited consideration thereof. Since its filing, however, the Closing on the Sale has occurred, as authorized by the Sale Order. Moreover, the Sale Order found that the Purchaser was a good faith purchaser entitled to the protections afforded by §363(m) of the Bankruptcy Code.
>
> Having both delayed in filing the Stay Motion and then setting it for a hearing more than a month and a half after the Sale Order became effective, VSI sat on its right to seek a stay pending resolution of the Appeal before the Closing could occur. That renders the Appeal moot, and the Court denies the Stay Motion as moot as well. *See e.g., Pittsburgh Food & Bev., Inc. v. Ranallo*, 112 F.3d 645, 649-651 (3d Cir. 1997) (because the appellant did not obtain a stay of the bankruptcy court's order approving a sale of assets, the district court was unable to grant effective relief to the appellant without affecting the validity of the sale, and therefore the appeal to the district court was moot and properly dismissed); *In re Hagood Reserve, LLC*, 2010 WL 5067444 (Bankr. W.D.N.C. 2010) (denying motion to stay a sale order pending appeal as moot where the appellant unilaterally set the hearing on the motion well beyond the date the sale order became effective, without seeking an extension of Bankruptcy Rule 6004(h)'s 14-day stay and without seeking expedited consideration of the motion, thereby allowing the sale transaction to close before the stay motion would be heard and rendering the requested relief moot).

TA676-679 (Bankr. D.I. 938, formatting altered).

Even though the Sale had closed nearly a month and a half prior, on February 11, 2025, Appellants filed a notice of appeal (Bankr. D.I. 941) of the Stay Denial Order, commencing the instant appeal.

## SUMMARY OF THE ARGUMENT

In the instant appeal, Appellants' arguments focus exclusively on equitable mootness, which Appellants contend was the sole basis for the Bankruptcy Court's denial of a stay pending appeal. The doctrine was not mentioned by the Bankruptcy Court and was not the basis for the Bankruptcy Court's denial of a stay. Instead, The Bankruptcy Court denied a stay due to actual mootness and statutory mootness under 11 U.S.C. § 363(m). With Appellants failing to raise an argument which establishes that the decision rendered by the Bankruptcy Court was an abuse of discretion, the Bankruptcy Court must be affirmed.

Moreover, the Bankruptcy Court's finding that the issue was actual and statutorily moot was correct. The sale which Appellants seek to stay has closed, leaving this Court with nothing to stay and no ability to do so. Even if this Court could stay an event which has already occurred, somehow restoring the parties to a world where the sale never closed would inherently impact the validity of the sale and is accordingly barred by Section 363(m).

Finally, Appellants failed to establish a single one of the four elements relevant to entry of a stay pending appeal. There can be no irreparable harm to Rembrandt or VSI, as the sale did not transfer Rembrandt's property and VSI has no interest in the outcome of this proceeding. As described in detail in the Trustee's Sale Appeal Brief, Appellants have no chance of success on the merits, as the Bankruptcy Court's detailed Sale Order and Sale Opinion were correct. The public interest would be damaged by entry of a stay, as a stay would undo the Trustee's expedient administration of the Debtors' bankruptcies. And retroactive grant of a stay would cause affirmative harm to the buyer and Debtors' legitimate creditors by subverting the purposes

underlying the statutory mootness doctrine expressed in 11 U.S.C. § 363(m).

## ARGUMENT

### A. Appellants Fail To Make Any Cogent Argument Establishing That The Bankruptcy Court Abused Its Discretion In Denying A Stay

Puzzlingly, Appellants' Brief focuses on equitable mootness, which Appellants contend was the sole basis for the Bankruptcy Court's Stay Denial Order. *See* D.I. 9 at p. 9 ("The Stay Order only rules on equitable mootness . . . ."). The equitable mootness doctrine was not mentioned in the Stay Denial Order and was not the basis for the Bankruptcy Court's denial of a stay. The Bankruptcy Court denied a stay due to actual mootness and statutory mootness under 11 U.S.C. § 363(m). *See* TA678-TA679, Stay Denial Order at ¶ 5. Because Appellants' arguments on appeal are based on the contention that the Bankruptcy Court erred in applying a doctrine which was not at issue, Appellants fail to make any cogent argument that the Bankruptcy Court abused its discretion in entering a stay, and their appeal should fail on this basis alone.

### B. As the Sale Has Closed The Instant Appeal Is Actually and Statutorily Moot

#### 1. The Appeal Is Actually Moot

As aptly summarized by the Bankruptcy Court, "[h]aving both delayed in filing the Stay Motion and then setting it for a hearing more than a month and a half after the Sale Order became effective, VSI sat on its right to seek a stay pending resolution of the Appeal before the Closing could occur. That renders the Appeal moot, and the Court denies the Stay Motion as moot as well." TA678-79 (citing, inter alia, *In re Hagood Reserve, LLC*, 2010 WL 5067444 (Bankr. W.D.N.C. 2010) (denying motion to stay a sale order pending appeal as moot where the appellant unilaterally set the hearing on the motion well beyond the date the sale order became effective, without seeking an extension of Bankruptcy Rule 6004(h)'s 14-day stay and without seeking expedited consideration of the motion, thereby allowing the sale transaction to close before

the stay motion would be heard and rendering the requested relief moot)). Here, as in *Hagood*, with the sale having closed "there is nothing to stay and no ability to do so." 2010 WL 5067444, at *17.

"'The mootness doctrine defines constitutionally minimal conditions for the invocation of federal judicial power.'" *In re Prosser*, 2021 WL 864949, at *4 (D.V.I. Mar. 8, 2021) (quoting *Brown v. Phila. Mun. Court*, 47 F. App'x 129, 130 (3d Cir. 2002)). "A case is moot when 'the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Brown*, 47 F. App'x at 130 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). "The heart of the mootness doctrine rests on the court's ability to grant effective relief in a dispute. If changes develop during the course of a case that prevent a Court from being able to grant the requested relief, the case must be dismissed as moot." *In re Prosser*, 2021 WL 864949, at *4 (citing *Donovan v. Punxsutawney Area School Bd.*, 226 F.3d 211, 216 (3d Cir. 2003)). "The 'case or controversy' requirement extends throughout all stages of federal judicial proceedings—both at the trial and appellate levels." *Id.*

Here, Appellants failed to obtain a stay of the sale of the Debtors' assets before that sale was consummated and accordingly cannot demonstrate that the Bankruptcy Court abused its discretion in denying a stay. While they now seek such a stay via the instant appeal, the sale which they seek to stay has already occurred, the underlying issue is no longer live, and this appeal must be dismissed as moot. *See, e.g., In re Najieb*, 80 Fed. App'x 734 (3d Cir.2003) (dismissing the debtor's motion for stay of a sheriff's sale pending the outcome of the bankruptcy appeal where the sale was already completed); *Boyke v. Mobility Distrib. Inc.*, 2015 WL 1225038, at *2 (M.D. Pa. Mar. 17, 2015) ("Here, the sale of Ms. Boyke's property has already occurred. As a result, even if this court were to find some basis to reverse the bankruptcy court's order, the court could

not grant Ms. Boyke the relief she seeks."); *In re Prosser*, 2021 WL 864949, at *4 (dismissing appeal pursuant to the general mootness doctrine after the consummation of a bankruptcy sale); *In re: Richards*, 2013 WL 84850, at *3 (D.V.I. Jan. 8, 2013) ("The problem arising here is that the sale in which [appellant] seeks involvement has already occurred. As a result, even if this Court were to reverse the bankruptcy court's order enjoining [appellant] from interfering with the sale, the Court could not grant [appellant] the relief he seeks regarding a sale which has already taken place.").

### 2. The Appeal Is Statutorily Moot

As correctly held by the Bankruptcy Court, *see* TA678-79, and as briefed in detail in the Trustee's Sale Appeal Brief, an appeal to the district court of an order approving the sale of a debtor's assets is moot under 11 U.S.C. § 363(m) if the debtor's assets are sold before the applicant obtains a stay pending appeal. *See, e.g., Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 647-651 (3d Cir. 1997) (finding an appeal from a bankruptcy court order authorizing the sale of assets from the debtor's Chapter 11 estate, after the sale had been consummated, was moot as it would affect the validity of the sale); *In re Pursuit Cap. Mgmt., LLC*, 874 F.3d 124, 135 (3d Cir. 2017). As set forth in detail above, the sale has closed and accordingly cannot be stayed. Even if it could, somehow restoring the parties to a world where the sale never closed would inherently impact the validity of the sale and is accordingly barred by Section 363(m). *See* Sale Appeal Brief at pp. 19-26.

### C. Even Had the Sale Not Closed, Appellants Failed to Demonstrate That They Are Entitled to a Stay Pending Appeal, And The Bankruptcy Court Did Not Deny Its Discretion In Denying One

The decision as to whether to grant a stay of an order pending appeal lies within the sound discretion of the lower court. *See, e.g., In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr.

9

S.D.N.Y. 2009) ("*General Motors*"). In ruling on a motion to stay, which utilizes the same strict standard as a preliminary injunction, courts assess four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injury the other parties interested in the proceeding; and (4) where the public interest lies." *Jones v. U.S. Bank*, *N.A.*, 2019 WL 5109746, at *3 (M.D. Pa. Oct. 11, 2019) (quoting *S.S. Body Armon I, Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 771 (3d Cir. 2019)). Appellants fail to establish a single factor, and the Bankruptcy Court's denial of a stay should be affirmed.

### 1. Appellants Failed to Establish Irreparable Harm

Irreparable harm is an essential prerequisite for a stay pending appeal. *See Revel*, 802 F.3d at 568. In this case, Appellants' argument for irreparable harm, i.e., that the assets subject to the sale could not be sold because they were embedded with non-transferable intellectual property belonging to Rembrandt, was squarely and property rejected in the Sale Opinion. *See* RA1858, Sale Opinion at p. 8. Indeed, the Trustee conveyed only the membership interests in the downstream entities and not any intellectual property owned by or contained in the downstream entities (as those assets do not constitute property of the Debtors' bankruptcy estates). RA1869, *id.* at 19 (describing the Bankruptcy Court's "finding that the Sale, with the exception of a piece of bonding equipment located in China [which Appellants do not dispute is property of the Debtors], is a deal for Technovative's equity stake in certain non-debtor subsidiaries").

In fact, the APA, pursuant to which the assets were conveyed, excluded any physical assets that potentially included Rembrandt intellectual property:

> (j) any grant of rights or license by Rembrandt 3D Holding Ltd. ("Rembrandt") or affiliates to Stream, including but not limited to the Rembrandt Grant of Rights in the Settlement Agreement and Mutual Release between Rembrandt and Stream

10

> dated May 23, 2021, any amendment thereto, and the Licensing Covenant between Rembrandt, Stream, and Visual Semiconductor, Inc. dated August 14, 2023, each to the extent valid, existing and enforceable as determined by a final, non-appealable order from a court of competent jurisdiction;
>
> (k) any physical assets that contain or include Rembrandt Intellectual Property, to the extent valid, existing and enforceable as determined by a final, non-appealable order from a court of competent jurisdiction;

RA76-RA77, Sale Order, Exhibit 1 - APA at Section 2.2(j-k); and

> Buyers acknowledge that certain Intellectual Property may be subject to superior rights of Rembrandt as Licensor, and that Sellers cannot transfer any interest in the Transferred Assets that is not owned by the Sellers.

RA83, *id.* at Section 3.4(a).

Moreover, to the extent any intellectual property exists in the downstream entities, the Sale Order provides for ample protection of Rembrandt's interests, as set forth in the Sale Opinion. RA1869, Sale Opinion at 19 ("to the extent Rembrandt believes that the sale violates its intellectual property rights, its litigation claims are preserved."); RA44, Sale Order at ¶ 12 ("For the avoidance of doubt, Rembrandt 3D Holding Ltd. is not an Enjoined Party with respect to claims it purports to have against the Buyer related to Rembrandt Intellectual Property alleged to be part of the Transferred Assets.").

Accordingly, Rembrandt retains its rights to proceed against the purchaser on the claims it has related to its alleged but likely nonexistent intellectual property rights. Such claims are pending in an ongoing lawsuit between Rembrandt and, *inter alia*, SeeCubic and Technovative, docketed as *Rembrandt 3D Holding Ltd v. Technovative Media, Inc. et al.*, C.A. No. 1:23-cv-00193-JLH (D. Del.), in which the only count asserted against Technovative was a request for

11

injunctive relief (the "Delaware District Court Case"). Rembrandt's "claims," while far from being proven, will ultimately be determined in the Delaware District Court Case.

Simply stated, nothing in the Sale Order impairs, reduces, limits, releases, or discharges Rembrandt's claims against the purchaser, and therefore, Rembrandt will suffer no harm, let alone irreparable harm, should a stay be denied. Moreover, VSI is not a creditor of the Debtors and is listed as an equity holder on Stream's list of equity security holders filed in its bankruptcy case. *See* TA59-60 (Bankr. D.I. 58, Stream's List of Equity Security Holders); *see also* TA4-5, 9- 55 (VSI not listed in Stream's Schedules of Secured and Unsecured Creditors); TA702, 706-08 (VSI not listed in Technovative's schedules of secured and unsecured creditors); TA680-84 (VSI not listed in Stream's claim register); TA709-10 (VSI not listed in Technovative's claims register). In other words, at the inception of this case, VSI's equity in Stream was worth zero. That is the same position VSI enjoys today. It is unfathomable how the Sale Order irreparably harms a party whose equity is worth zero and was always worth zero.[3]

---

[3] For the same reason, as set forth in detail in the Trustee's Sale Appeal Brief – i.e., because VSI's only interest in the Debtors' bankruptcy cases is as a purported investor or equity holder in Stream – VSI is not a creditor of the Debtors' estates and lacks appellate standing. VSI argues that it has standing because it is somehow the holder of an approximate $1 million administrative claim. *See* E.D. Pa. No. 24-cv-06397, D.I. 19 at pp. 5-8. Even if VSI's status as an administrative claimant is accepted – which it should not be, as VSI's claim is baseless and under challenge by the Trustee – it is inadequate to confer appellate standing. The settlement and sale under challenge by VSI yielded $7.5 million in funding to the otherwise insolvent estate, an amount which dwarfs VSI's purported administrative claim. Accordingly, the threat of harm to VSI for nonpayment of its purported administrative claim is "'extremely remote'" and VSI "lacks standing because its theory of harm is too remote or speculative." *Matter of Highland Cap. Mgmt., L.P.,* 74 F.4th 361, 367 (5th Cir. 2023) (holding that an administrative claimant lacked appellate standing due to the merely speculative prospect of harm when the estate had funding sufficient to pay the claim); *see also In re Prosser*, 469 B.R. 228, 233 (D.V.I. 2012) (holding that a party lacked appellate standing when it was "not a creditor [and its] only claimed interest in the outcome . . . is the possibility that it might be entitled to administrative fees").

### 2.    Appellants Will Not Succeed on the Merits

"As compared to the party seeking an injunction, 'an applicant seeking a stay has, relatively speaking, more difficulty establishing the first factor, the likelihood of success on the merits, due to the difference in procedural posture.'" S*ee Newspaper, Newsprint, Magazine and Film Delivery Drivers, Helpers, and Handlers, Int'l Brotherhood of Teamsters, Local Union No. 211 v. PG Publ'g Co., Inc.*, 2019 WL 9101872, at *3 (W.D. Pa. Dec. 27, 2019) (quoting *Dehainaut v. Cal. Univ. of Pa.*, 2011 WL 3810132, at *2 (W.D. Pa. Aug. 29, 2011)); *see also Cipla Ltd. v. Amgen Inc.*, Case 2019 WL 2053055, at *1 (D. Del. May 9, 2019) ("A 'strong showing' of likelihood of success is required to prevail on a Rule 62(d) motion." (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987))).

Here, the Bankruptcy Court's Sale Order and Sale Opinion make conclusions and findings as to the good faith of the purchaser, the dispute of Rembrandt with respect to its claimed intellectual property rights in the downstream entities, and the conclusion that Rembrandt's interest, if any, is subject to Section 363(f).  RA1865-1871, Sale Opinion at 15-21.  As set forth in detail in the Trustee's Sale Appeal Brief, which is incorporated herein by reference, the Bankruptcy Court's conclusions were correct and should be affirmed by this Court on appeal, and Appellants have no chance of success on the merits.

### 3.    A Stay Would Harm the Public Interest

It is well held that the "public interest favors the expedient administration of the bankruptcy proceedings." *See In re Savage & Assocs, P.C.*, 2005 WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005). Indeed, compromises are favored in bankruptcy precisely because they "minimize litigation and expedite the administration of a bankruptcy estate." *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  In these cases, the Debtors' financial and managerial issues have been

ongoing for years. Only upon the appointment of the Trustee was the wasteful litigation, the needless acrimony, and endless infighting between the Secured Creditors and the Debtors' principals concluded.

The Bankruptcy Court echoed this when it held that

> the Trustee satisfied his fiduciary duties in reaching the Settlement, marketing the Assets for sale, and declaring the Stalking Horse Bid the winning bid after no other bids were received. The Trustee has sound business justification for the Sale, and he is faced with non-operational Debtors, enormous liabilities, and little funding.

RA1869-70, Sale Opinion at 19-20.

There is little doubt that without the Trustee's cool-headed and fresh look at these cases, Rajan's misconduct, the incurrence of unnecessary and wasteful expenses, and the delay to the real creditors of the Debtors would have needlessly continued. The Sale Order and the closing of the Sale brought the major disputes in these cases to a substantial conclusion, and the stay sought by Appellants would reverse this progress and thus would be contrary to the public interest.

### 4. A Stay Would Cause Harm to Other Parties

As discussed in detail above, given the fact that the Sale has closed, there is nothing to be stayed, the relief sought by Appellants is moot, and no harm could possibly come from affirming the Bankruptcy Court's denial of a stay. Indeed, the relief sought by Appellants – i.e., the retroactive grant of a stay as to an event which has already occurred – would cause affirmative harm to the buyer and Debtors' legitimate creditors by subverting the purposes underlying the statutory mootness doctrine expressed in 11 U.S.C. § 363(m). *See, e.g., In re Pursuit Cap. Mgmt., LLC*, 874 F.3d at 133 ("[Section 363(m)] provides not only . . . finality to the judgment of the bankruptcy court, but particularly . . . finality to those orders and judgments upon which third parties rely.") (ellipses in original; quotation marks and citations omitted).

## **CONCLUSION**

For the reasons set forth herein, the Trustee respectfully requests that this Court affirm the Bankruptcy Court's denial of Appellants' Stay Motion.

Respectfully submitted,

Dated:   May 2, 2025

By: */s/ Steven M. Coren*
Steven M. Coren, Esquire
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 735-8700

and

By: */s/ Michael D. Vagnoni*
Michael D. Vagnoni, Esquire
Edmond M. George, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066

*Counsel to the Trustee*

**CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that the foregoing brief complies with: (i) the page limits provided in this Court's March 6, 2025 Scheduling Order because the substantive portions of the brief are 25 pages or less and (ii) the typeface and font requirements provided in the Policies and Procedures of the Honorable John M. Gallagher because it has been prepared in a proportionally spaced typeface (Times New Roman) using Microsoft Word with 12 point font.

On May 2, 2025, I caused an electronic copy of the foregoing brief with the Clerk of Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system, which will effectuate service on all counsel registered therewith.

*/s/ Steven M. Coren*
Steven M. Coren, Esquire